**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THE PROTECT DEMOCRACY PROJECT, INC.,<br>2020 Pennsylvania Avenue, NW, #163,<br>Washington, DC 20006<br><br>       Plaintiff,<br><br>       v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br><br>       Defendant. | Civil Action No. 17-2409 |

## AMENDED COMPLAINT

1.      Plaintiff, The Protect Democracy Project, Inc. ("Protect Democracy"), brings this action against Defendant, U.S. Department of Justice ("DOJ" or "the Department"), to compel compliance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  Plaintiff alleges as follows:

2.      President Donald Trump has repeatedly denounced cable news network CNN for the content of its coverage of him and his administration, and has threatened to use the levers of government power he controls, including the Antitrust Division of the DOJ, to punish CNN for its protected speech.

3.      CNN's parent company, Time-Warner, is involved in a proposed merger with AT&T, over which the DOJ has oversight.

4.      On November 20, 2017, the DOJ filed a lawsuit to block the merger between Time-Warner and AT&T, following months of threats by President Trump to do so.

5. Plaintiff Protect Democracy seeks to compel the release of documents about whether anyone in the Trump Administration has improperly interfered with the Department's review of the merger between AT&T and Time-Warner, or has acted in that matter based on the President's personal dislike of CNN's protected speech.

6. In authoritarian systems, those in power wield the machinery of government to silence or punish their critics and reward their allies. In the United States, the law applies to all in an even-handed manner, no matter how they are viewed by those in power. The Department of Justice in particular has an obligation to ensure "equal justice under law," as the motto on its building declares.

7. Throughout his time in office, President Trump has threatened to deploy the levers of government against those who might criticize him or report the truth. For example, he has threatened to use the antitrust authorities to punish the owner of the *Washington Post*, has called for journalists to be fired by their employers, and has threatened to revoke the broadcast licenses of media networks he dislikes.

8. While any improper use of government authority to punish critics or reward supporters would pose a grave threat to our constitutional system, that threat is particularly acute in a situation in which the government uses or appears to use its regulatory authority to punish media entities or others who are critical of the government. Such behavior could chill criticism, endangering the kind of free and open speech and debate that our Founders enacted the First Amendment to protect precisely because it is necessary for self-government.

9. Benjamin Franklin famously called freedom of speech the "principal pillar" of a free society and saw it as the primary bulwark against tyranny. A leader with the power to "punish for words," he wrote, "would be armed with a weapon most destructive and terrible."

10.     In this light, the President's public statements about CNN have been especially troubling.  President Trump has repeatedly singled out and attacked CNN, calling it "fake news" and "garbage." He has even gone as far as to tweet a video showing him physically attacking the network's logo, concluding the tweet with a refashioning of the logo as "FNN: Fraud News Network."

11.     The President has also frequently attacked CNN's President, Jeff Zucker, and suggested that he should be fired.  In June 2017, for example, at a gathering at the Trump hotel in Washington, D.C., the President called CNN's personnel "really dishonest people," suggested he should sue CNN, and then said, "Jeff Zucker, I hear he's going to resign at some point pretty soon. I mean, these are horrible human beings."

12.     The antitrust laws serve a critically important role in our country, protecting the American public against the dangers of consolidated market power.  The Justice Department's Antitrust Division plays an essential function in reviewing proposed mergers for compliance with our antitrust laws.

13.     It is critical to the effectiveness of the Antitrust Division, and the American people's confidence in the Justice Department, that it consider each matter before it strictly based on the law and facts at issue, without regard to any political considerations.

14.     Administrations of both parties have long had policies in place that prohibit the White House from getting involved in or interfering with the Justice Department's consideration of party-specific matters.

15.     It would be particularly dangerous and pernicious if there were political interference in a specific antitrust matter based on the free speech of the parties—all the more so when a media entity is directly involved in the matter.

16.     News reports prior to and since the filing of the lawsuit to block the merger have indicated that political appointees in the Trump Administration may be intervening in this particular antitrust matter because of President Trump's dislike for CNN's news coverage.

17.     According to an article in the *New York Times* on November 9, 2017, at a recent meeting, "Justice Department officials called on AT&T to sell Turner Broadcasting—the group of cable channels under the Time Warner banner that includes CNN—as a potential requirement for gaining government approval" of the merger.  As the article explains, "A central component of the dispute, according to people from both companies and the Justice Department, is CNN— the network that Mr. Trump has frequently attacked as a purveyor of 'fake news.'"

18.     Indeed, according to reporting, President-elect Trump raised his irritation with CNN directly with AT&T CEO Randall Stephenson in January at a meeting in Trump Tower. Trump tweeted that same day that "CNN is in a total meltdown" and "their credibility will soon be gone."

19.     Before he joined the Trump Administration, Trump's head of the Antitrust Division, Makan Delrahim, stated in an interview that he did not see this merger as a particular problem.  According to news reports, however, Delrahim—who worked in Trump's White House before taking over the Antitrust Division—has recently changed his position.  As a *New York Times* commentator wrote in a November 8, 2017 essay, "Maybe [Delrahim] has had a legitimate change of heart about the arrangement since inspecting the deal more closely from his perch at the Justice Department.  But his new boss has left him with some troubling appearances."

20.     While there might be legitimate legal reasons for the Department to attempt to block the merger, the President's conduct has already created, at a minimum, an appearance of bias in this process.  That appearance alone is injurious to the free marketplace of ideas our Founders sought to create.  But if the Justice Department's consideration of this merger has been infected by more than just an appearance of bias—if actual improper interference has taken place—that is even more problematic.

21.     There are at least some experts who believe it may have.  As one commentator wrote in a November 8 article on CNBC, just a few days prior to the filing of the lawsuit to block the merger, "The elephant in the room is that CNN is a major thorn in President Donald Trump's side.  CNN has certainly produced its fair share of coverage critical of the president….This move using the antitrust division of the Justice Department, which would financially orphan CNN, is a new and more disturbing development."

22.     These concerns intensified after the filing of the lawsuit.  Commentators have variously described the lawsuit as a "political vendetta," and as "rais[ing] the specter of political retaliation" against CNN, and pointed out that the Justice Department's action was inconsistent with its own prior posture toward similar mergers of companies which do not directly compete with each other.  The media quoted one employee of CNN as saying, "This is political, this is unprecedented, and the only explanation is political pressure from the White House."

23.     And President Trump himself cast doubt on the propriety of the lawsuit a few days after it was filed when, according to multiple media reports, including in the *Washington Post*, *Variety*, and the *Guardian*, he gave his apparent immediate blessing to a merger between 21st Century Fox, the parent company of the unabashedly pro-Trump Fox News, and Disney, a so-called "horizontal merger" of two direct competitors of the type that has historically drawn

greater scrutiny from the Department.  As one commentator put it, "Two reasons might help account for a contrast that is otherwise hard to explain: 21st Century Fox owns Fox News, which Trump loves; Time Warner owns CNN, which Trump hates."

24.     At a minimum, the American people deserve to know whether the Antitrust Division's consideration of this issue has been infected by improper considerations.  The American people must have confidence that all decisions are based on the law and the facts, and not whether particular parties are politically well-connected or, in contrast, a thorn in the President's side.

25.     As set forth below, Protect Democracy submitted Freedom of Information Act requests in July 2017, when reports of White House interference in the merger first emerged, and then again, in November 2017, just prior to DOJ's filing of the merger lawsuit, for records reflecting communications between or among Justice Department and White House staff, including Mr. Delrahim, regarding the Department's review of this merger.  Protect Democracy seeks to compel production of these records because the Department has not responded adequately to these requests in the time required by law.

## JURISDICTION AND VENUE

26.     The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

27.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

28.     Plaintiff Protect Democracy is an organization with 501(c)(3) status, incorporated under the laws of the District of Columbia, and headquartered at 2020 Pennsylvania Avenue, NW, #163, Washington, DC 20006.  Plaintiff's mission is to protect our democracy from

descending into a more autocratic form of government by preventing those in power from

depriving Americans of a free, fair, and fully-informed opportunity to exercise ultimate

sovereignty.  As part of this mission, Plaintiff seeks to inform public understanding of operations

and activities of the government by gathering and disseminating information that is likely to

contribute significantly to the public understanding of executive branch operations and activities.

Plaintiff regularly requests such information pursuant to FOIA.  Plaintiff intends to give the

public access to documents transmitted via FOIA on its website, www.protectdemocracy.org,

and to provide information about and analysis of those documents as appropriate.

29.     Defendant DOJ is an agency of the executive branch of the federal government of

the United States.  Defendant is headquartered at 950 Pennsylvania Avenue, NW, Washington,

DC 20530.  Defendant has possession, custody, and control of the documents that Plaintiff seeks

in response to its FOIA request.

## STATEMENT OF FACTS

*Plaintiff's FOIA Request #1*

30.     On the morning of July 12, 2017, Plaintiff sent to Defendant a FOIA request

(dated July 11, 2017) seeking the following records:

(1) All communications, including but not limited to emails or calendar entries,
regarding the July 5, 2017 article in The New York Times entitled "The
Network Against the Leader of the Free World"
(https://www.nytimes.com/2017/07/05/business/media/jeffrey-zucker-
cnntrump.html?_r=0).

(2) All communications, including but not limited to emails or calendar entries
that are to, from, between, or among Department of Justice staff, including but
not limited to Attorney General Jeffrey Sessions, and White House staff,
including but not limited to Makan Delrahim and Stephen ("Steve") Bannon,
including but not limited to their official email addresses ending in
"who.eop.gov," regarding:

    a.   the proposed merger between AT&T and Time Warner;

    b.   the Department of Justice's review of or action regarding the proposed merger between AT&T and Time Warner;

    c.   the firing, resignation, or other departure of Jeffrey Adam ("Jeff") Zucker from his position as president of CNN.

(3)  In addition to the records requested above, we also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request.  If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

The timeframe for this request is January 20, 2017 through the date that searches are conducted for records responsive to this FOIA request.

*See* Exhibit A (FOIA request #1).

31.     Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II).  *See* Exhibit A.

32.     Plaintiff's request was submitted by facsimile to DOJ's Office of Information Policy ("OIP").  Plaintiff also submitted this request to DOJ's Antitrust Division, but is not seeking to litigate that portion of the request in this Amended Complaint because it subsumed in Request #2 set forth below.

*Defendant's Response to FOIA Request #1*

33.     On July 17, 2017, Plaintiff received a letter from Defendant's OIP division that acknowledged receipt of Plaintiff's FOIA request and identified the case reference numbers as assigned to the DOJ component offices of the Attorney General, the Deputy Attorney General, and Public Affairs.  *See* Exhibit B (DOJ OIP acknowledgment letter #1).

34.     OIP's acknowledgment letter stated that records sought by Plaintiff's request would "require searches in other Offices, and so your request falls within 'unusual circumstances.' *See* 5 U.S.C. 552 § (a)(6)(B)(i)-(iii)." The letter also identified the request as having been assigned to the "complex track." Based on the "unusual circumstances" of the records, and the designated complexity of the request track, OIP indicated that it would require ten additional days beyond the statutory time limit to respond.

35.     The OIP letter suggested to Plaintiff that, "[i]n an effort to speed up our process, you may wish to narrow the scope of the request to limit the number of potentially responsive records so that it can be placed in a different processing track.  You can also agree to an alternative timeframe for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.  You may also contact the Office of Government Information Services (OGIS) of the National Archives and Records Administration to inquire into the FOIA mediation services they provide." *See* Exhibit B.

36.     Furthermore, as to Plaintiff's request for a fee waiver, OIP stated that it had not yet made a decision, but "will do so after we determine whether fees will be assessed for this request." *See* Exhibit B.

37.     Finally, OIP expressed "regret" for "the necessity of the delay," but "assure[d]" Plaintiff that "your request will be processed as soon as possible." *See* Exhibit B.

38.     To date, OIP has not responded to Plaintiff's request.

*Plaintiff's FOIA Request #2*

39.    On November 1, 2017, Plaintiff sent to Defendant a FOIA request seeking the

following records:

1.   All documents, including but not limited to emails or memoranda, reflecting
     or relating to communications between President Trump or any White House
     employee and any Department of Justice personnel (including but not limited
     to the Antitrust Division) concerning the proposed merger between AT&T and
     Time Warner Communications, including but not limited to any
     communications that refer or relate to CNN, Jeff Zucker, or any other CNN
     employee.

2.   All documents, including but not limited to emails or memoranda, relating to
     or referencing the proposed merger between AT&T and Time Warner
     Communications that discuss or in any way refer to the following individuals
     or entities: President Trump or any White House employee; CNN, Jeff
     Zucker, or any other CNN employee.

3.   In addition to the records requested above, we also request records describing
     the processing of this request, including records sufficient to identify search
     terms used and locations and custodians searched, and any tracking sheets
     used to track the processing of this request.  If your agency uses FOIA
     questionnaires or certifications completed by individual custodians or
     components to determine whether they possess responsive materials or to
     describe how they conducted searches, we also request any such records
     prepared in connection with the processing of this request.

The timeframe for this request is January 20, 2017 through the date that searches
are conducted for records responsive to this FOIA request.

*See* Exhibit C (FOIA request #2).

40.    Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5

U.S.C. § 552(a)(4)(A)(ii)(II).  *See* Exhibit C.

41.    Plaintiff's request was submitted by email to the DOJ's Antitrust Division and via

OIP's online portal (https://foiaonline.regulations.gov) to the Offices of the Attorney General

and the Deputy Attorney General (hereafter, "OAG/DAG"), DOJ components for which OIP

manages FOIA processing.

*Defendant's Responses to FOIA Request #2*

42.     On November 17, 2017, Plaintiff received a letter from Defendant's Antitrust Division ("Division") that acknowledged receipt of Plaintiff's FOIA request and identified the case reference number assigned to it.  *See* Exhibit D (DOJ Antitrust acknowledgment letter).

43.     The Division's acknowledgment letter stated that its "official records are maintained outside of this Office, and we have not had an opportunity to complete a search for records responsive to your request." The letter further identified the request as having been assigned to the "Track 3," which it describes as "for requests that involve voluminous or sensitive records, or for which lengthy or numerous consultations are required." Due to the external location of the Division's records, the Division indicated that it would be "unable to comply with the 20 working day time period, as well as the ten additional days provided by the statute." The letter further explained that "based on the median number of working days that it takes this Office to complete the processing of Track 3 requests, we estimate that it could take over five months to complete the search and subsequent review of responsive documents."  *See* Exhibit D.

44.     The Division letter suggested to Plaintiff that, "[i]n an effort to speed up this process, you may wish to reformulate or narrow the scope of your request to limit the number of potentially responsive records, or you may wish to agree to an alternative timeframe." The letter also provided the information that Plaintiff "may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer." *See* Exhibit D.

45.     Furthermore, as to Plaintiff's request for a fee waiver, the Division stated that it was "deferring a decision… at this time, because we are not able to determine whether the processing of your request will result in any assessable fees."  *See* Exhibit D.

46.     Finally, the Division expressed "regret" for "the necessity of the delay," but promised to "make every attempt to provide you with any publicly available material as soon as possible."  *See* Exhibit D.

47.     On December 1, 2017, Plaintiff received a letter from Defendant's OIP division that acknowledged receipt of Plaintiff's FOIA requests to OAG/DAG and identified the case reference number it had assigned to each.  *See* Exhibit E (DOJ OIP acknowledgment letter #2).

48.     The OIP acknowledgment letter stated that "the records you seek require a search in and/or consultation with other Offices, and so your request falls within 'unusual circumstances.'" Due to these "unusual circumstances," OIP indicated that it would "need to extend the time limit to respond to your request beyond the ten additional days provided by the statute."  The letter further identified the request as having been assigned to the "complex track" for which the processing time would "necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request." *See* Exhibit E.

49.     The OIP letter suggested to Plaintiff that, "[i]n an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records so that it can be placed in a different processing track." OIP further identified to Plaintiff the option of "agree[ing] to an alternative time frame for processing, should records be located," or "await[ing] the completion of our records search to discuss either of these options." *See* Exhibit E.

50.     The OIP letter also provided Plaintiff information to "contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer." *See* Exhibit E.

51.     As to Plaintiff's request for a fee waiver, OIP stated that it had "not yet made a decision on your request for a fee waiver.  We will do so after we determine whether fees will be assessed for this request." *See* Exhibit E.

52.     Finally, OIP expressed "regret" for "the necessity of the delay" and asserted the assurance that "your request will be processed as soon as possible."  *See* Exhibit E.

53.     To date, the Defendant's Antitrust Division and Office of Information Policy have not made the required determinations and notifications, or otherwise responded to Plaintiff's requests for records.  Nor have they made any determination regarding Plaintiff's request for fee waiver.

## COUNT I

### (Violation of FOIA, 5 U.S.C. § 552)

54.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

55.     Defendant is in violation of FOIA by failing to respond to Plaintiff's requests within the statutorily prescribed time limit and by unlawfully withholding records responsive to Plaintiff's request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1) Order Defendant, by a date certain, to conduct searches that are reasonably likely to lead to the discovery of any and all records responsive to Plaintiff's requests;

(2) Order Defendant, by a date certain, to demonstrate that it has conducted adequate searches;

(3) Order Defendant, by a date certain, to produce to Plaintiff any and all non-exempt records or portions of records responsive to Plaintiff's requests, as well as a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

(4) Enjoin Defendant from improperly withholding records responsive to Plaintiff's requests;

(5) Order Defendant to grant Plaintiff's requests for fee waivers;

(6) Grant Plaintiff an award of attorney fees and other reasonable litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E);

(7) Grant Plaintiff such other relief as the Court deems appropriate.

Respectfully submitted,

Date: February 9, 2018

/s/ *Justin Florence*
JUSTIN FLORENCE (Bar No. 988953)
        Justin.Florence@protectdemocracy.org
KRISTY PARKER*
        Kristy.Parker@protectdemocracy.org
The Protect Democracy Project, Inc.
2020 Pennsylvania Avenue., NW, #163
Washington, DC 20006
Phone: 202-599-0466
Fax: 929-777-8428

*Counsel for Plaintiff*

*Application to D.C. Bar pending;
supervised by licensed member of D.C. Bar.